## In The Matter of NORMAN INDUSTRIES, INC.

## Robert P. BRENHAM, Receiver, Plaintiff,

v.

## DEERFIELD ORGANIZATION, INC., et al., Defendants.

### Bankruptcy No. B78–1615–L.

United States Bankruptcy Court,
W. D. Louisiana,
Lafayette, Opelousas Division.

Nov. 6, 1979.

## OPINION

RODNEY BERNARD, Jr., Bankruptcy Judge.

This cause came on for trial on June 25, 1979, at Opelousas, Louisiana, upon defendants' motion to dissolve a restraining order and to dismiss the Receiver's complaint seeking a permanent injunction. St. Paul Fire and Marine Insurance Company was represented by Charles J. Boudreaux, Lafayette, La.; Deerfield Organization, Inc., was represented by William E. Logan, Jr., Lafayette, La.; and the Receiver, Robert P. Brenham, was represented by John W. Hutchinson, Lafayette, La.

*Findings of Fact*

1.

Norman Industries, Inc., and St. Paul Fire and Marine Insurance Company entered an insurance contract agreement. The policy bought by the debtor was to be effective for the period of July 31, 1978, to July 31, 1979. Deerfield Organization, Inc., was the broker which took the application and placed the insurance with St. Paul.

2.

The policy issued to the debtor was a comprehensive general liability excess coverage policy called a "Bumbershoot". Under the policy terms, St. Paul agreed to be liable for the excess of the limits of the underlying insurances and then up to $5,000,000.00. A schedule of Underlying Insurances, attached to and forming part of the policy, listed the Underwriter, Coverage, and Limits of Liability of each underlying insurer.

3.

The policy premium of $73,500.00 was paid in full by the debtor.

4.

. On September 25, 1978, the debtor filed a voluntary petition under Chapter XI of the Bankruptcy Act proposing an Arrangement.

5.

On October 11, 1978, the Receiver applied for an Order and the Order was granted authorizing that Patricia C. Hill be appointed the insurance broker.

**6.**

St. Paul informed the debtor by registered letter dated December 8, 1978, that its policy would be cancelled 30 days from the date of receipt of the letter. Cancellation was prompted by a phone call from the president of Deerfield Organization, Inc., informing St. Paul that there were some changes in the debtors' primary program and corporate philosophy. Furthermore, two losses were reported to St. Paul between the policy renewal date, July 31, 1978, and December 8, 1978. Both were Jones Act suits which occurred more than one year prior to the reporting date and both claims were in amounts in excess of the primary insurance coverage.

**7.**

The cancellation notice was in full accord with the cancellation provision in the policy. The policy provides:

"Either the Company or the Assured may cancel this insurance by giving the other thirty (30) days written notice, after which this policy shall be of no force or effect." . . .

**8.**

On December 21, 1978, the Receiver filed a complaint seeking an injunction and temporary restraining order against Deerfield Organization, Inc., Reliance Insurance Company, Underwriters Insurance Agency, Inc., and St. Paul Fire and Marine Insurance Company. The order was signed the same day and a hearing date was set for December 29, 1978.

**9.**

The Stay Order issued on December 21, 1978, restrained Deerfield Organization, Inc., from interfering with the property rights of the debtor by discussing with any insurance company insuring Norman Industries, Inc., any information detrimental to the best interests of the estate, or by requesting cancellation of any policy in force on which the premium had been paid, or in any other way that would interfere with the rights of Norman Industries, Inc. The Court also restrained Reliance Insurance Company and St. Paul Fire and Marine Insurance Company from cancelling, terminating, or modifying any policy issued by them to Norman Industries, Inc.

**10.**

On December 28, 1978, on motion of counsel for Deerfield Organization, Inc., the Court ordered that the hearing set for December 29 be continued without date. The Court also ordered that all defendants were to remain restrained until further order of the Court. All defendants were notified of this order.

**11.**

St. Paul filed a motion to Dissolve the Restraining Order and to Dismiss Receiver's Complaint on April 18, 1979. St. Paul averred that the Stay Orders issued on December 21 and December 28, 1978, had expired 10 days after issuance, that for stated reasons St. Paul should be allowed to terminate the policy with the debtor either retroactively or as of a date to be fixed by the Court, and alternatively that certain other actions be taken to protect St. Paul from alleged greater liability due to the change in brokers and changes in the underlying insurance coverages.

### Conclusions of Law

The issue in this case is whether the Bankruptcy Court has the jurisdiction to enjoin an insurance carrier from cancelling its policy with a debtor which has filed a Chapter XI proceeding, and if so, whether the injunction was properly extended beyond the 10 days allowed by statute.

Federal Bankruptcy Rule 11–44 is not applicable to these facts since Rule 11–44 provides an automatic stay of court actions against the debtor and other actions to enforce a lien against the debtor's property.

However, there is jurisdiction to grant injunctions which do not involve in personam suits or any act or proceeding to enforce a lien upon the debtor's property where the debtor has filed a petition under Chapter XI of the Bankruptcy Act. This jurisdiction derives from Section 2a(15) of the Bankruptcy Act, from Section 1651 of

Title 28 of the United States Code, and from the general equity powers of a court of bankruptcy. See Collier on Bankruptcy, paragraph 3.23 (14th ed. 1978).

Under Section 2a(15), courts of bankruptcy are invested with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under the Act, to "(m)ake such orders, issue such process, and enter such judgment, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this act." The United States Code Title 28 Section 1651(a) (1948) provides that "(t)he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Both of these statutes recognize and declare the principle that Courts of Bankruptcy are courts of equity. Since Bankruptcy Courts are courts of equity, the power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction is inherent. *Continental Illinois National Bank & Trust Co. v. Chicago, R. I. & P. Ry. Co.* (1935), 294 U.S. 648, 675, 55 S.Ct. 595, 79 L.Ed. 1110.

Therefore, the court does have the authority and jurisdiction to issue injunctions to enforce the provisions of the Act, and to effect the object of the proceedings free from interference. The purpose and object of the reorganization proceeding is the preservation of the going-concern value of the business of the debtor. *Application of Realty Associates Securities Corporation*, 58 F.Supp. 220 (S.D.N.Y.1945). Liability insurance coverage is necessary to effect a plan of arrangement for the debtor in the present case since the debtor must be protected against the kind of unforeseen loss to the estate for which the St. Paul policy provides coverage. This, the court in the instant case has the authority to enjoin St. Paul and other insurers from cancelling the prepaid policies owned by Norman Industries, Inc.

The case of *In the Matter of Merritt Lumber Co., Inc.*, 336 F.Supp. 325 (E.D.Pa. 1971), was quite similar to the present case. In that case, the Referee in Bankruptcy enjoined an insurance company from cancelling a fire insurance policy covering the property of the debtor who had filed a petition under Chapter XI. The insurer appealed to the District Court but that court affirmed the Referee's order. The cancellation was in accord with the provisions of the insurance policy which permitted either party to unilaterally cancel by giving the other thirty days written notice, but the court felt that cancellation would effectively destroy the value of the business of the debtor since without the fire insurance coverage the receivers would not be able to continue the operation of the business.

Counsel for St. Paul and Deerfield rely on the cases of *Schokbeton Industries, Inc. v. Schokbeton Products Corporation*, 466 F.2d 171 (5th Cir. 1972), and *Power-Pak Products, Inc. v. Royal Globe Insurance Company*, 433 F.Supp. 684 (W.D.N.Y.1977), to support St. Paul's motion to dismiss the Receiver's complaint. Both cases are easily distinguished from the present facts. In *Schokbeton* the plaintiff had notified the debtor of its intent to terminate a license *prior* to the debtor's filing of Chapter XI petition. In the present case, St. Paul attempted to cancel the policy *after* the Chapter XI petition was filed. Furthermore, in *Schokbeton*, the debtor had a duty to the plaintiff to pay royalties. The debtor could not indefinitely postpone the performance required by the agreed contract between the parties. In the present case, however, the debtor had fulfilled its duties to the insurance company by paying the required premium prior to filing its Chapter XI petition. In *Power-Pak*, the court held that the insurance company's action for a Declaratory Judgment to determine its obligation was not a claim which could be stayed under Rule 11-44. However, in the present case, St. Paul was attempting to undertake an act which would have the effect of interfering with or diminishing the value of the debtor's estate and the court had authority as discussed hereinbefore to enjoin St. Paul from this act.

■ There is further statutory authority for the issuance of the injunction in the present case. Section 311 of the Bankruptcy Act states that " . . . the court in which the petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located." The debtor's interest in a prepaid insurance policy is an intangible property right belonging to the debtor, so once the debtor has commenced proceedings under Chapter XI, that property right falls within the Bankruptcy Court's jurisdiction and the Bankruptcy Court then may issue whatever orders are necessary to safeguard that property.

An example of the treatment of intangible property in the possession of the debtor is found in the case of *In re Fontainebleau Hotel Corporation*, 508 F.2d 1056 (5th Cir. 1875). In that case the Fifth Circuit held that as an exercise of the bankruptcy court's summary jurisdiction, the bankruptcy judge had properly entered an injunction against the telephone company restraining it from changing the debtor's telephone numbers or from requiring the debtor to post a security bond. The Court further stated that "(t)he telephone numbers are a valuable asset, just like the hotel's building or furniture. The purpose of summary jurisdiction is to given the bankruptcy court a quick means of preserving the wherewithal for maintaining the debtor's business."

Other intangible forms of property in the possession of the debtor at the time of filing a petition under Chapter XI have been held to be within the jurisdiction of the Bankruptcy Court. A few examples are: continued electrical service to the debtor, *In re Security Investment Properties, Inc.*, 2 BCD 118 (N.D.Ga.1975); the listing of securities on the New York Stock Exchange, *In the Matter of Cavanagh Communities Corporation*, 4 BCD 487 (S.D.N.Y. 1975); and a license issued by the State of New York, *In the Matter of the Zeitzer Food Corporation*, 9 CBC 614 (E.D.N.Y. 1976).

The final question in this case is whether the temporary restraining order issued on December 21, 1978, and extended on December 29, 1978, remains in effect or expired after 10 days.

Bankruptcy Rule 701 provides that "(t)he rules of this Part VII govern any proceeding instituted by a party before a bankruptcy judge to . . . (5) obtain an injunction, . . . ." The applicable rule in Part VII is Rule 765 which provides that "Rule 65 of the Federal Rules of Civil Procedure applies in adversary proceedings . . . ". FRCP Rule 65(b) outlines the required form of a temporary restraining order which is issued without notice to the adverse party. As to the duration of the temporary restraining order, FRCP Rule 65(b) provides:

"A temporary restraining order . . . shall expire by its own terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. . . . On 2 days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require."

■ This Court finds that the receiver for Norman Industries, Inc., stated the facts in his complaint seeking the temporary restraining order in adequate specificity to meet the formal requirements of FRCP Rule 65. This Court also finds that all parties did consent to an extension of the temporary restraining order beyond the original 10 day effective period. Any party who wished to dissolve the temporary restraining order could have so moved with only 2 days' notice to the Receiver, as provided by FRCP Rule 65. St. Paul did not so move until April 18, 1979, at which time a hearing was set.

Commentary in *Moore's Federal Practice* suggests that consent may not even be necessary for the extension of a temporary restraining order when good cause exists. The example is given that perhaps a hearing for the preliminary injunction could not practically be brought within the maximum 20 day period, or the hearing could not be concluded within that time. *Moore's* states: "A court's power should not be so rigidly circumscribed that an additional extension could not be made for good cause, although the restrained party refused consent." See *Moore's Federal Practice*, Vol. 7, Part 2, pp. 65–81, 65–82.

In conclusion, therefore, this Court finds that St. Paul Fire and Marine Insurance Company, Reliance Insurance Company, and Underwriters Insurance Agency, Inc., were restrained on December 21, 1978, from cancelling, terminating, or modifying any policy issued by them to Norman Industries, Inc. Deerfield Organization, Inc., was restrained on December 21, 1978, from interfering with the property rights of the debtor by discussing with any insurance company insuring Norman Industries, Inc., any information detrimental to the best interests of the estate, or by requesting cancellation of any policy in force on which the premium had been paid, or in any other way that would interfere with the rights of Norman Industries, Inc. This Court further finds that the restraining order remained in effect until the end of the policy period as contracted and agreed to between the parties. St. Paul Fire and Marine Insurance Company, Inc., is granted relief in the alternative by the direction of this Court that the policy expired by its own terms on July 31, 1979, and that St. Paul is not required to renew the policy.