In re Jill C. DEUEL, Debtor.

Harold S. Taxel, Chapter
7 Trustee, Appellant,

v.

Chase Manhattan Bank, USA, N.A.; Jill C. Deuel; Will T. Deuel; and Lake View Carlton Hills Homeowners Association, Appellees.

BAP Nos. SC–06–1132, SC–06–1063.
Bankruptcy No. 04–02787.
Adversary No. 06–90460.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Sept. 22, 2006 at Pasadena, California.

Filed—Dec. 28, 2006.

Michael Y. MacKinnon, Pyle, Sims, Duncan & Stevenson, APC, San Diego, CA, for Harold S. Taxel, Ch. 7 Trustee.

James C. Mitchell, Mitchell & Gilleon, San Diego, CA, for Chase Manhattan Bank, U.S.A.

Before: MONTALI, SNYDER,[1] and KLEIN, Bankruptcy Judges.

1. Hon. Paul B. Snyder, Bankruptcy Judge for the Western District of Washington, sitting by designation.

## OPINION

MONTALI, Bankruptcy Judge.

One of the most powerful weapons in a bankruptcy trustee's arsenal is the "strong arm" power of Section 544(a)(3) [2] to recover real property, subject to the same limitations that a bona fide purchaser would have when acquiring that property from the debtor outside of bankruptcy. Trustees for decades have defeated unperfected liens and unrecorded transfers, all to the benefit of unsecured creditors in bankruptcy.

The bankruptcy court rejected a trustee's attempt to exercise that power, relying on a Ninth Circuit decision holding that a petitioning creditor's unrecorded lien that is described in an involuntary bankruptcy petition operates as constructive notice sufficient to defeat the trustee. *In re Professional Investment Properties of America*, 955 F.2d 623 (9th Cir.1992) (*"Professional Investment"*). But the court of appeals carefully limited its decision to the effect of the petition in the involuntary case, as distinguished from the schedules. *Id.* at 628 n. 3, *citing with approval, In re Gurs*, 27 B.R. 163, 165 (9th Cir. BAP 1983) [3].

Today we confirm that the trustee still has that powerful weapon, concluding that information contained in schedules and the statement of financial affairs filed in a voluntary bankruptcy case is not subject to the *Professional Investment* rule, and therefore is insufficient to defeat the trustee's power, regardless of notice. Thus we reject the bankruptcy court's contrary holding, which could operate to eviscerate a well-established avoiding power.

We also reject the bankruptcy court's alternative use of equitable subrogation to rescue a creditor that voluntarily released its previous lien on the debtor's property but neglected to record its new lien. Equitable subrogation would unduly prejudice the debtor's other creditors and the bankruptcy estate and cannot override the trustee's statutory strong arm power.

Accordingly, we REVERSE.

## I. FACTS

There are no material facts in dispute. In 1999 debtor Jill C. Deuel ("Debtor") and her former spouse Will T. Deuel (collectively, the "Deuels") purchased a residence in Santee, California (the "Property"). In 2001 they refinanced the Property with a $122,400.00 loan secured by a recorded deed of trust that was assigned to an affiliate of Chase Manhattan Bank USA, N.A. ("Chase") (the "Prior Deed of Trust"). On September 4, 2002, the Deuels refinanced this debt with a new $136,000.00 loan from Chase secured by a new deed of trust against the Property which by mistake was not recorded (the "Unrecorded Deed of Trust"). The

---

**2.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23, because the case from which this appeal arises was filed before its effective date (generally October 17, 2005).

**3.** Responding to the trustee's argument that information received after the filing of the involuntary petition could not affect his status, the court responded (in footnote 3):

> This is true. *In re Gurs*, 27 B.R. 163 (9th Cir. BAP 1983) defined a § 544(a)(3) hypothetical bona fide purchaser as one who is without actual knowledge "at the instant the petition is filed," and purchases property from the debtor for value and in good faith.
>
> Consequently, we will only discuss the ramifications of the petition itself.

Deuels used $121,170.79 of the new loan to pay off the balance of the 2001 loan. The Prior Deed of Trust was reconveyed by an instrument recorded on September 26, 2002.

Debtor filed her voluntary Chapter 7 bankruptcy petition that commenced this case on March 26, 2004 (the "Petition Date"). Harold S. Taxel was appointed as Chapter 7 trustee ("Trustee").

With her bankruptcy petition Debtor filed her bankruptcy schedules and statement of financial affairs ("SFA") which mentioned Chase's claim and alleged lien in several places. In Schedule A (Real Property), she listed a "secured claim" of $134,740.00 against the Property. In Schedule D (Creditors Holding Secured Claims), she listed a claim held by Chase with a balance of $134,165.00, and stated: "Incurred: 2002, Lien: deed of trust, Security: [the Property]." In SFA item 3, she listed prepetition payments of $1000 per month to Chase. Attached to her SFA is a copy of her 2003 mortgage interest statement from Chase.

On October 26, 2004, Chase filed in the bankruptcy court a Complaint to Quiet Title to Deed of Trust Against Real Property, naming as defendants the Deuels, Trustee, and Lake View Carlton Hills Homeowners Association (the "HOA"). Trustee filed a motion to dismiss the complaint and in the alternative for summary judgment. The Deuels filed joinders. Chase filed an opposition and a cross-motion for summary judgment.

On January 5, 2005, the bankruptcy court held a hearing on these various motions and stated:

> ... the schedules filed with the petition ... provide constructive notice to the trustee as a bona fide purchaser of real property, that there was a secured claim out there ....

So it appears that, under the law of the Ninth Circuit—and I guess most specifically the circuit case is *[In re] Professional Investment Properties of America* [955 F.2d 623 (9th Cir.1992)]—that the trustee in this case was on constructive notice that this security interest existed; and therefore under the law of the circuit, he is unable to set aside the lien, so to speak, or take priority over the bank under Section 544(a)(3).

Transcript Jan. 5, 2005, pp. 3:22–4:15.

The bankruptcy court also ruled in favor of Chase on grounds of equitable subrogation, Chase's alternative basis for relief. Chase argued that it was equitably subrogated to the (released) lien created by the Prior Deed of Trust. The bankruptcy court stated that all the elements of equitable subrogation appeared to be satisfied. Among other things:

> [T]here is case law out there ... I think it was a case out of Hawaii that was cited by the [T]rustee *[In re Christie–Pequignot,* 2003 WL 22945921 (Bankr. D.Hi. October 24, 2003), *aff'd* BAP No. HI–03–1563–KMoB (9th Cir. BAP August 11, 2004) ], showing that even if there is neglect, as long as there is no injustice to the [T]rustee or the other creditors—in other words, they're *not worse off*—then the equitable subrogation would apply.
>
> ....
>
> As the bank points out, under equitable subrogation the [T]rustee and the creditors would be *better off* to the tune, I think, of about $15,000, because the bank would only step into the shoes, so as to speak, of the original Chase loan, and as I recall, that was about $15,000 less than the loan which is the subject of this adversary proceeding. I guess there were some additional charges.

... So if the doctrine of equitable subrogation applies, Chase is only subrogated to the amount of 122,400 and not the new amount of a hundred and thirty-six. So there clearly is *benefit* to the trustee and the creditors.[4] But it does appear that equitable subrogation does apply, and I would find—I would also grant the summary judgment in that regard for the bank.

Transcript Jan. 5, 2005, pp. 9:25–11:1 (emphasis added).

The bankruptcy court entered an order denying defendants' motions and granting Chase's cross-motion for summary judgment and thereafter issued a judgment in favor of Chase. Both the order and the judgment state that the defendants "have no right, title, interest or lien in or to the Property senior to the lien/security interest of [Chase] under the [Unrecorded] [D]eed of [T]rust."

Trustee filed timely notices of appeal from both the order (SC–06–1063) and the judgment (SC–06–1132) and on his application we consolidated the two appeals. The notices of appeal were served on both of the Deuels and the HOA and name them as parties, but they have not participated in this appeal.

## II. ISSUES

A. Is Trustee's status as a hypothetical bona fide purchaser under Section 544(a)(3) defeated by constructive or inquiry notice of Chase's Unrecorded Deed of Trust from Debtor's bankruptcy schedules and SFA?

B. Does the doctrine of equitable subrogation apply?

## III. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(2)(K). We have jurisdiction under 28 U.S.C. § 158(c).

## IV. STANDARDS OF REVIEW

We review de novo the bankruptcy court's rulings on the cross-motions for summary judgment and the motion to dismiss. *In re Garske*, 287 B.R. 537, 541 (9th Cir. BAP 2002) (summary judgment); *In re Laizure*, 349 B.R. 604, 606 (9th Cir. BAP 2006) (motion to dismiss complaint).

Although there is usually a factual question whether a purchaser has inquiry or constructive notice (*Professional Investment*, 955 F.2d at 626) we believe that the bankruptcy court properly treated as a legal question whether a debtor's bankruptcy schedules impart constructive or inquiry notice. *Cf. In re Kim*, 161 B.R. 831, 836–37 (9th Cir. BAP 1993) (whether legally defective abstract of judgment gave constructive or inquiry notice was not a factual issue precluding summary judgment).

In the circumstances of this case, whether to apply the doctrine of equitable subrogation may also be an issue of law that we review de novo. *See Mort v. U.S.*, 86 F.3d 890, 893 (9th Cir.1996) (deciding equitable subrogation issue, which district court had declined to decide, when "facts are undisputed and further factfinding is unnecessary"). We do not decide the proper standard of review because we would reach the same result on the equitable subrogation issue were we to review it for abuse of discretion. *See U.S. v. Avila*, 88 F.3d 229, 239 n. 12 (3d Cir.1996) (assuming without

---

4. We read the bankruptcy court's comments about Trustee and creditors receiving a "benefit" and not being "worse off" to mean that it believed the bankruptcy estate was better off with Chase having a lien of $122,400 instead of $134,165. This appears to assume that Chase would otherwise be entitled to a lien of $134,165, which we reject below. Without any Chase lien, the estate is obviously "better off."

deciding that application of equitable sub-rogation doctrine is reviewed for abuse of discretion). *See also Dieden v. Schmidt,* 104 Cal.App.4th 645, 128 Cal.Rptr.2d 365, 372 (2002) (stating, in a case involving equitable subrogation, "Summary judgment motions usually raise matters of law, but not when the trial court grants or denies such a motion on the basis of equitable determinations. The matter then becomes one of discretion, which this court reviews under the abuse of discretion standard.") (citation omitted).

## V. DISCUSSION

A. *Trustee's strong arm power arises "as of the commencement of the case," before there can be any constructive notice from Debtor's bankruptcy schedules*

Chase makes no arguments against Trustee's strong arm power other than its reliance on *Professional Investment* and on equitable subrogation. The single question presented in this section of our discussion, therefore, is whether *Professional Investment* compels us to affirm.

■ *Professional Investment* acknowledges both the power of and limitations on the trustee's strong arm power. On the one hand, the trustee's status as a hypothetical bona fide purchaser is "without regard to" any actual knowledge of the trustee or of any creditor. 11 U.S.C. § 544(a)(3). On the other hand, the trustee only obtains those rights that a hypothetical purchaser without actual knowledge could have obtained under applicable law at the time the bankruptcy is commenced. *Professional Investment,* 955 F.2d at 627 (following *McCannon v. Marston,* 679 F.2d 13, 17 (3d Cir.1982)); *In re Weisman,* 5 F.3d 417, 420–21 (9th Cir.

1993). Thus "[a] trustee does not become a hypothetical bona fide purchaser if she [or he] has been put on constructive or inquiry notice." *Professional Investment,* 955 F.2d at 627. *See also* 5 A. Resnick & H. Sommer, *Collier on Bankruptcy* ¶¶ 544.03, 544.08, pp. 544–9 *et seq* (*"Collier"*) (trustee deemed to have conducted title search and is subject to constructive or inquiry notice).[5]

In this case the timing of any constructive or inquiry notice is critical. The bankruptcy court held that Trustee had constructive notice of Chase's Unrecorded Deed of Trust from Debtor's bankruptcy schedules. We hold that whatever the Trustee learned from the schedules and SFA came too late and is irrelevant.

Section 544(a)(3) provides:

(a) The trustee shall have, *as of the commencement of the case,* and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

\* \* \* \* \* \*

(3) A bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer *at the time of the commencement of the case,* whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3) (emphasis added).

A case is "commenced" by the filing of a petition. 11 U.S.C. §§ 301(a), 302(a), 303(b); Fed. R. Bankr.P. 1002(a). Thus the bankruptcy trustee has the status of a

---

**5.** This discussion will refer to constructive or inquiry notice interchangeably. No party has suggested that there is any difference for purposes of this appeal.

bona fide purchaser "at the instant the petition is filed." *Professional Invest-ment,* 955 F.2d at 628 n. 3 (quoting *In re Gurs,* 27 B.R. 163, 165 (9th Cir.BAP1983)). As the Ninth Circuit recognized in *Professional Investment,* "any information or notice which [the trustee] attained *after* that period [i.e., after the filing of the petition] did not bear on his status as a bona fide purchaser at the time of filing." *Professional Investment,* 955 F.2d at 628 and n. 3 (emphasis added).[6]

The bankruptcy schedules, SFA, and other required documents cannot be filed until there is a case in which to file them. As the applicable rules state, they must be filed "[i]n" a case. Fed. R. Bankr.P. 1007(a)-(c). *See In re Castro,* 158 B.R. 180, 183 (Bankr.C.D.Cal.1993) ("The filing of a voluntary petition, not the schedules, commences the case."). *See also Harvey,* 222 B.R. at 895 nn. 11–12 (noting trustee's argument that bankruptcy schedules "are deemed filed *after* the filing of the petition that commences a bankruptcy case," but not deciding issue because other argument was dispositive) (emphasis in original).

In some cases (including this one) the bankruptcy schedules and other documents are presented for filing with the petition. That does not make them the same document, as evidenced by the separate Official Forms for each of them. *Compare* Official Forms 1 (voluntary petition) *and* 5 (involuntary petition) *with, e.g.,* Official Forms 6, 6A through 6J, and 7 (bankruptcy schedules and SFA). *See also Castro,* 158 B.R. at 183 ("[T]he petition and the schedules are separate docu-

ments."). Indeed, the Federal Rules of Bankruptcy Procedure specifically provide that most required documents can be filed up to 15 days after the petition. *See* Fed. R. Bankr.P. 1007(b) and (c).

For these reasons we hold that the bankruptcy schedules, SFA, and other required documents can only be filed after the petition, even if all these documents are physically presented to the clerk for filing together or if, as in this case, they are electronically combined into a single electronic file and transmitted onto the bankruptcy court's docket as such. All the pages of the documents might reach the court at essentially the same instant, but conceptually the case must be commenced before the bankruptcy schedules, SFA, and other required documents can be filed in that case. Therefore, by definition, these documents cannot provide constructive notice "as of the commencement of the case." Any constructive or inquiry notice from Debtor's bankruptcy schedules and SFA came too late to defeat Trustee's strong arm power under Section 544(a)(3).

Nothing in *Professional Investment* holds otherwise. The Ninth Circuit stated, "This case turns on whether the *petition itself* put the trustee on sufficient inquiry or constructive notice of [the creditors'] prior security interest" and "we will only discuss the ramifications of the *petition itself.*" *Professional Investment,* 955 F.2d at 627 and 628 n. 3 (emphasis added). In that case the petition itself did give notice: it was an involuntary petition and in the space provided for describing his

---

**6.** The Ninth Circuit was applying Washington state law and this case involves California law but no party has cited any authority that this makes any difference or that notice *after* the filing of the petition would be sufficient to defeat Trustee's status as a bona fide purchaser in this case. *See Professional Investment,* 955 F.2d at 627 (bona fide purchaser must be without notice *"prior* to his acquisition of title")* (emphasis added, citation omitted); Wash. Rev.Code § 65.08.070 (race notice statute); *In re Harvey,* 222 B.R. 888, 893 (9th Cir. BAP 1998) (applying California law); Cal. Civ.Code §§ 19 (constructive notice generally), 1213 (constructive notice re real property), *and* 1214 (race notice statute).

claim one of the petitioners stated that his claims were "supposedly secured by assignments of Deeds of Trust ... in the aggregate amount of approximately $137,500." *Id.* at 628 (quoting involuntary petition). In this case the petition is voluntary and there is not even a space on the form to give any notice of Chase's Unrecorded Deed of Trust. *See* Official Form 1 (voluntary petition). Trustee had no constructive or inquiry notice of Chase's purported lien from the voluntary petition. Accordingly, *Professional Investment* does not compel us to defeat Trustee's strong arm power. *See In re Thomas,* 147 B.R. 526, 531 n. 8 (9th Cir. BAP 1992) ("In this case, unlike *Professional Investment Properties,* the petition made no mention of [the alleged constructive trust interest] in the property"), *aff'd,* 32 F.3d 572 (9th Cir.1994) (table).[7]

Our holding is reinforced by the fact that Chase's reading of *Professional Investment* could lead to arbitrary results or abuse. If a debtor's bankruptcy schedules happen to be filed after the trustee is appointed—as often occurs in voluntary Chapter 7 cases because of the 15 day grace period for filing bankruptcy schedules in Fed. R. Bankr.P. 1007(c)—then presumably there is no constructive notice. *See Castro,* 158 B.R. 180 (no constructive notice when trustee was appointed before schedules were filed). Likewise, if the bankruptcy schedules happen not to describe the unperfected claim adequately then there is no constructive notice. *See Harvey,* 222 B.R. at 895 (vague and inconsistent bankruptcy schedules "did not necessarily imply" ownership interest and therefore did not impart constructive notice). A debtor might even take advantage of the situation to favor or disfavor one creditor over others by adjusting the content of the bankruptcy schedules or the time when they are filed.

In sum, Debtor's bankruptcy schedules and SFA have no bearing on Trustee's strong arm power. They were filed after "the commencement of the case" so any constructive or inquiry notice of Chase's Unrecorded Deed of Trust came too late to defeat Trustee's statutory power as a hypothetical bona fide purchaser under Section 544(a)(3).

### B. Equitable subrogation

The bankruptcy court held in the alternative that Chase could defeat Trustee's strong arm power under Section 544(a)(3) using the doctrine of equitable subrogation, up to the dollar amount of the lien under its released Prior Deed of Trust. The bankruptcy court held that Trustee and Debtor's creditors would not be

---

**7.** Trustee argues that *Professional Investment* is contrary to the plain meaning of the statute. It is true that much of the Ninth Circuit's discussion focused on the time at which the trustee in that case was appointed, and that appears to be irrelevant under the statute which focuses on the time of "commencement of the case." 11 U.S.C. § 544. Perhaps the court did not focus on the fact that a hypothetical bona fide purchaser is just that—hypothetical—so the time of his actual appointment is irrelevant. *See Professional Investment,* 955 F.2d at 628 ("A trustee *who has not yet been appointed* can hardly argue that he has been prejudiced by being charged with notice by the petition") *and* 629 ("the trustee had a duty to inquire as to the nature of the [creditors'] claim *once he was appointed*") (emphasis added). *See also In re Wohlfeil,* 322 B.R. 302, 305–06 (Bankr.E.D.Mich.2005) (criticizing *Professional Investment* as contrary to plain meaning of statute). We do not ignore binding precedent nor do we speculate further. We simply construe *Professional Investment* to be limited in its application to an involuntary petition wherein the petitioning creditor asserts its lien. We express no opinion as to the outcome in any future case wherein a voluntary petitioner departs from Official Form 1 and inserts information about a creditor.

"worse off" and there was no "injustice" from applying the doctrine. Again, we disagree.

] Subrogation is a derivative right whereby one party is substituted in the place of another with reference to a lawful claim, demand, or right. *In re Hamada*, 291 F.3d 645, 649 (9th Cir.2002). Equitable subrogation is a legal fiction and because it is a creature of equity it "is enforced solely for the purpose of accomplishing the ends of substantial justice." *Hamada*, 291 F.3d at 649 (citation omitted). The doctrine is governed by state law and one of the requirements of California law is that its application must "not work an injustice to the rights of others." *Golden Eagle Ins. Co. v. First Nationwide Fin. Corp.*, 26 Cal.App.4th 160, 31 Cal.Rptr.2d 815, 821 (1994); *Hamada*, 291 F.3d at 651 (same); M. Lilly, *Subrogation of Mortgages in California: a Comparison with the Restatement and Proposals for Change*, 48 UCLA L.Rev. 1633, 1660–61 at n. 120 and accompanying text (2001).

 Equitable subrogation "allows a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance." *Mort*, 86 F.3d at 893. Even a canceled lien can be revived, but not if "the superior or equal equities of others would be prejudiced thereby." *Lawyers Title Ins. Corp. v. Feldsher*, 42 Cal.App.4th 41, 49 Cal. Rptr.2d 542, 546 (1996) (citation and italics omitted). For example, the holder of a junior lien or interest is generally put in no worse situation if a third party who pays off the senior debt is equitably subrogated to the senior lien's priority. The junior lien or interest holder did not rely on the absence of the senior lien when it first extended credit or transferred value, and would receive a windfall if the doctrine were not applied. *Mort*, 86 F.3d at 895.

] This case is different. Trustee as a hypothetical bona fide purchaser is deemed to have given value for the Property without any knowledge of Chase's Unrecorded Deed of Trust and in reliance on the real estate records. *Gurs*, 27 B.R. at 165; 5 *Collier* ¶ 544.08, text accompanying n. 5, p. 544–16.2. As established in the previous section of our discussion Trustee had no constructive or inquiry notice of the Unrecorded Deed of Trust. Moreover, Chase had recorded a reconveyance of its Prior Deed of Trust and Trustee is deemed to have relied on that reconveyance. *See First Fidelity Thrift & Loan v. Alliance Bank*, 60 Cal.App.4th 1433, 71 Cal.Rptr.2d 295 (1998) (subsequent mortgagee could rely on mistakenly recorded release).

 California courts have held that the equities favor a bona fide purchaser over one asserting equitable subrogation. *See J.G. Boswell Co. v. W.D. Felder & Co.*, 103 Cal.App.2d 767, 230 P.2d 386, 389 (1951) (rejecting application of equitable subrogation as against bona fide purchaser); 58 *Cal. Jur.3d, Subrogation* § 7 (2006), text accompanying nn. 10–13 ("subrogation will not be allowed where it would work an injustice to the rights of others and does not lie against an innocent person, as where it would jeopardize or defeat intervening rights, including those of *bona fide purchasers without notice*") (emphasis added).

The same result has been reached under the laws of other states. *See In re Zaptocky*, 250 F.3d 1020, 1028 (6th Cir.2001) (under Ohio law, "the doctrine of equitable subrogation does not apply against a bona fide purchaser without knowledge"); *In re Bridge*, 18 F.3d 195, 204 (3d Cir.1994) (trustee prevailed over creditor who was attempting to rely on its own previously

released lien under equitable subrogation doctrine, applying New Jersey law).

We can conceive of circumstances in which the equities might favor application of the doctrine of equitable subrogation, but Chase has alleged no such circumstances. *See In re Reasonover*, 236 B.R. 219, 225–233 (Bankr.E.D.Va.1999) (under Virginia law, when deed of trust had not yet been released as of petition date, trustee as bona fide purchaser took property subject to mortgage company's equitable subrogation claim), *remand after appeal*, 238 F.3d 414 (4th Cir.2000) (table), *on remand*, 2001 WL 1168181 (Bankr.E.D.Va. 2001).

Trustee's status as a bona fide purchaser is not simply a legal technicality. It serves "one of the strongest policies behind the bankruptcy laws"—the policy of ratable distribution among all creditors. *In re Seaway Exp. Corp.*, 912 F.2d 1125, 1129 (9th Cir.1990) (citation omitted) (avoiding creditor's inchoate equitable interest in real property when creditor had taken no steps to provide actual or constructive notice to subsequent bona fide purchasers). As stated in *Christie–Pequignot*, 2003 WL 22945921 at *5, a creditor holding a valid and perfected lien is entitled to preferential treatment but granting such treatment to an unperfected lien "would come at the expense of other creditors and would be unjust to the other creditors." *See also Hamada*, 291 F.3d at 653 (rejecting equitable subrogation as applied to nondischargeability judgment because creditor seeking subrogation made "no claim that [debtor] committed fraud against [creditor] that would entitle it to preferential treatment over other creditors to whom [debtor] owes money").

It would be inequitable to apply the legal fiction that Chase had never released its Prior Deed of Trust, thereby giving it nearly the full value of the Property and depriving Debtor's other creditors of a pro rata share of that value. Congress has determined as much by giving Trustee the status of a bona fide purchaser under Section 544(a)(3). Chase cannot defeat Trustee's statutory strong arm power based on equitable subrogation.[8]

## VI. CONCLUSION

Section 544(a)(3) grants the bankruptcy trustee for the benefit of all creditors the rights of a bona fide purchaser of the real property "as of the commencement of the case." A debtor's bankruptcy schedules and other required documents cannot be filed until there is a case in which to file them, so by definition they cannot impart any constructive or inquiry notice until after commencement of the case. Nothing in Debtor's bankruptcy schedules or SFA has any bearing on Trustee's statutory strong arm power to avoid Chase's Unrecorded Deed of Trust.

Nor is Trustee's statutory strong arm power defeated by the doctrine of equitable subrogation. That doctrine is only applied when it will not work an injustice to the rights of others, and if Chase received the entire value of the Property based on its released Prior Deed of Trust rather than sharing pro rata with other creditors that would work an injustice.

The judgment in favor of Chase is REVERSED and the case is REMANDED with directions to grant Trustee's motion for summary judgment and enter a judgment in favor of Trustee.

---

**8.** We do not address the other elements of equitable subrogation because Trustee has not argued that those elements are unsatisfied.