**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: JILL C. DEUEL,
                              *Debtor,*

CHASE MANHATTAN BANK, USA,
N.A.,
                              *Appellant,*

v.

HAROLD S. TAXEL, Trustee,
                              *Appellee.*

No. 07-55266

BAP Nos.
SC-06-01063-
MoSnK
SC-06-01132-
MoSnK

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Klein, Montali, and Snyder, Bankruptcy Judges, Presiding

Argued September 11, 2008 and
Submitted September 29, 2009
Pasadena, California

Filed January 28, 2010

Before: Alex Kozinski, Chief Judge, Andrew J. Kleinfeld
and Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Kleinfeld

---

**COUNSEL**

James C. Mitchell, Mitchell & Gilleon, San Diego, California, for the appellant.

Michael Y. MacKinnon, Kathleen A. Cashman-Kramer, Pyle Sims Duncan & Stevenson, APC, San Diego, California, for the appellee.

---

**OPINION**

KLEINFELD, Circuit Judge:

We address the "strong-arm power" of the bankruptcy trustee under 11 U.S.C. § 544(a)(3) in the context of an unre-

corded deed of trust. The question comes down to whether a bona fide purchaser for value without notice can take ahead of an unrecorded lien, and once the question is put that way, the answer is obviously "yes."

## I.  Facts

The case arises out of repeated home refinancing to take advantage of rising real estate values. Debtor Jill Deuel and her ex-husband Will Deuel bought a condominium in California in 1999. They borrowed $106,700 from North American Mortgage Company, secured by a duly recorded deed of trust. Two years later, on June 6, 2001, they refinanced, this time borrowing $122,400 from American Mortgage Express Financial Corp., again secured by a duly recorded deed of trust. The Deuels used this loan to pay off the prior North American loan. This second loan was assigned to Chase Manhattan in May 2002, and the assignment was duly recorded.

The problem giving rise to this case arises from the Deuel's third loan, the second time they refinanced and drew more equity out of their condo, in 2002. This time they borrowed $136,000 from Chase Manhattan and gave Chase Manhattan a deed of trust to secure their note. Somehow Chase Manhattan failed to get the deed of trust recorded. What did get recorded was the deed of reconveyance from the previous loan, which was paid off in full out of the new loan. Thus as far as anyone could tell from the county records, the condo had been paid off and there was no longer a lien against it.

The next year, in 2003, Ms. Deuel filed for a chapter 13 bankruptcy. That case was dismissed on the motion of the chapter 13 trustee. A year later, in 2004, she again filed for bankruptcy, this time under chapter 7. This 2004 case is the one before us. The appellee, Taxel, is the trustee for Deuel's chapter 7 bankruptcy. Deuel filed electronically. Along with her petition, she filed her schedules, listing Chase Manhattan's secured debt.

Chase Manhattan filed a complaint to quiet title to its lien, and prevailed in Bankruptcy Court on the theory that under our decision in *Briggs v. Kent* (*In re Professional Investment Properties. of America*)[1] her schedules provided constructive notice to the bankruptcy trustee of Chase Manhattan's unrecorded lien, and alternatively, that it was subrogated to its own previous recorded lien because it had used the new loan to pay it off. The Bankruptcy Appellate Panel reversed, ruling in favor of the trustee, distinguishing *Professional Investment*, and rejecting the subrogation theory.[2] Chase Manhattan appeals.

## II. Analysis

We review the Bankruptcy Appellate Panel's decision de novo.[3] Our conclusion is that its reasoning is correct, and we affirm.

### A. Trustee's Strong Arm Power.

**[1]** A bankruptcy trustee has the power to avoid any transfer that a hypothetical bona fide purchaser for value could have avoided under the law of the state in which the real property is located. What matters to this case is when the hypothetical bona fide purchaser is treated as having hypothetically purchased the property for value. The statutory language gives the answer "as of the commencement of the case."[4] The relevant portion of the statute says:

> (a) The trustee shall have, *as of the commencement of the case*, and without regard to any knowledge of the trustee or of any creditor, the rights and powers

---

[1] 955 F.2d 623 (9th Cir. 1992).

[2] *Taxel v. Chase Manhattan Bank, USA* (*In re Deuel*), 361 B.R. 509 (9th Cir. BAP 2006).

[3] *Beeler v. Jewell* (*In re Stanton*), 303 F.3d 939, 941 (9th Cir. 2002).

[4] 11 U.S.C. § 544(a).

of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

. . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer *at the time of the commencement of the case*, whether or not such a purchaser exists.[5]

In this case the petition and the schedules were filed simultaneously by means of electronic filing. Does that mean that the trustee took with notice of the lien disclosed in the schedules? If we were talking about real people walking over to the bankruptcy court and looking at the documents, the answer would be yes, but we are not. As is often the case in property law, we speak not of the physical but of the metaphysical.[6] The statute says that a chapter 7 bankruptcy is "commenced by the filing with the bankruptcy court of a petition,"[7] so the petition and only the petition commences the case, regardless of what else happens at the same time. As the Bankruptcy Appellate Panel explained, the schedules "cannot be filed until there is a case in which to file them."[8] The trustee has not even been

---

[5]11 U.S.C. § 544 (emphasis added).

[6]"For who shall interest us in contingent remainders or the Statute of Uses, while Chinese metaphysics remain unexplored?" Frederic W. Maitland, 1 Collected Papers 190 (Fisher ed. 1911, Cambridge Univ. Press) (quoted in Cornelius J. Moynihan, Introduction to the Law of Real Property 199 n.1 (1962)).

[7]11 U.S.C. § 301(a). The statute was amended in 2005 by dividing the statute into subsections (a) and (b).

[8]*Deuel*, 361 B.R. at 515.

appointed when the petition is filed, and could not possibly be a bona fide purchaser for value without notice upon the filing of the petition, but he is treated by the statute as though he were.

Chase Manhattan correctly argues that a real person buying the property and checking the court records would know from the schedules Deuel filed simultaneously with her petition that it had a lien. But we are talking about a metaphysical and not a real person. The trustee who is treated as a bona fide purchaser for value without notice as of the commencement of the case does not yet exist at the commencement of the case. The schedules may be filed simultaneously or within 15 days after the petition is filed,[9] and there is no reason to condition the trustee's strong arm power on whether they are filed earlier than they need to be.

**[2]** As the Bankruptcy Appellate Panel correctly pointed out, the schedules must be filed "[i]n" a case, which exists only after the filing of a petition has "commenced" a case, so whatever the trustee may learn from the schedules and statement of financial affairs "came too late and is irrelevant" even though it was filed when the petition was filed.[10] The petition and schedules are on different official forms.[11] It cannot matter whether a hypothetical trustee who immediately read what was filed would have actual knowledge from the schedules of the lien, or even if the subsequently appointed trustee does have actual knowledge, because section 544 says that the strong arm power exists "without regard to any knowledge of the trustee."[12]

---

[9]Fed. R. Bankr. P. 1007(c).

[10]*Deuel*, 361 B.R. at 514-15.

[11]*Compare* Official Form 1 (voluntary petition) *with* Official Form 5 (involuntary petition).

[12]11 U.S.C. § 544(a).

Chase Manhattan's argument rests on our decision in *Professional Investment*. That was an involuntary bankruptcy filed by a creditor, the very creditor that held the unrecorded deed of trust from the debtor.[13] The petition itself expressly referred to the deed of trust, because an involuntary petition requires the creditor filing it to state its name and address, amount of claim, and nature of claim.[14] We held that because "the petition itself" gave notice of the lien to the trustee, the trustee could not be deemed a bona fide purchaser for value without notice.[15] We adopted the view that the trustee's status is determined " 'at the instant the petition is filed,' " so "we will only discuss the ramifications of the petition itself,"[16] but held that where the trustee was put on notice "by the very petition"[17] he could not be said to take without notice.

**[3]** By its terms, *Professional Investment* is limited to involuntary petitions that give notice of an interest. The not yet existing trustee, under *Professional Investment*, cannot be a hypothetical bona fide purchaser *without notice* when the petition is filed where the duly filled out form of the petition itself gives notice. The trustee is then like a purchaser *with* notice. We need not address the controversy[18] about whether *Professional Investment* was correctly decided, since it has no application to a voluntary petition. Voluntary and involuntary petitions operate differently in many respects: one is filed by the debtor, the other by a creditor; one does not list claims, the other states what interest the creditor filing it has; the com-

---

[13]*Professional Investment*, 955 F.2d at 625.

[14]Official Form 5.

[15]*Professional Investment*, 955 F.2d at 627, 628.

[16]*Id.* at 628 n.3 (quoting *Saghi v. Walsh* (*In re Gurs*), 27 B.R. 163 (9th Cir. BAP 1983)).

[17]*Id.* at 628.

[18]*See Kohut v. Quicken Loans, Inc.* (*In re Wohlfeil*), 322 B.R. 302, 305-06 (Bankr. E.D. Mich. 2005); *cf. Little v. Duncombe* (*In re Duncombe*), 143 B.R. 243, 246 (Bankr. C.D. Cal. 1992) (characterizing *Professional Investment* as having found "a narrow exception" to Ninth Circuit law).

mencement of a voluntary case by a petition "constitutes an order"[19] (the automatic stay), but an involuntary petition does not.

[4] The conclusion we reach is not based solely on literalism and metaphysics. It is practical. The Bankruptcy Appellate Panel correctly pointed out that if schedules could defeat the trustee's status as a bona fide purchaser for value without notice in a voluntary petition, a debtor could use simultaneous filing of petition and the schedules to favor one creditor over others. Sometimes creditors and debtors acting together before the bankruptcy have good reason to delay recording[20] and may have a continuing reason after filing to keep assets from other creditors. A fundamental purpose of bankruptcy is fair distribution pro rata within the classes of creditors determined by Congress of a debtor's inadequate assets.[21] That purpose could be defeated if a debtor were able to jump an unrecorded security interest over the trustee's status on behalf of other creditors by mentioning it when the debtor filed the petition.

[5] State law controls whether the trustee's status as a bona fide purchaser for value without notice defeats the rights of the person against whom the trustee seeks to assert his powers.[22] California law provides that a conveyance, "from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees."[23] Chase Manhattan did not record, so the trustee did not have constructive notice of its lien. Under California law, a conveyance is "void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good

---

[19]11 U.S.C. § 301(b).

[20]*See, e.g.*, *Washburn & Roberts, Inc. v. Park East* (*In re Washburn & Roberts, Inc.*), 795 F.2d 870, 874 (9th Cir. 1986) (Tang, J., dissenting).

[21]*Begier v. I.R.S.*, 496 U.S. 53, 58 (1990).

[22]*Robertson v. Peters* (*In re Weisman*), 5 F.3d 417, 420 (9th Cir. 1993).

[23]Cal. Civ. Code § 1213.

faith and for a valuable consideration, whose conveyance is first duly recorded."[24] The strong arm clause enables the trustee to avoid an unrecorded lien as if he were "a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case."[25] That means that we are to deem the trustee not only to have purchased the property for value without notice of the unrecorded lien, but also to have recorded his deed when the petition was filed. It is as though he were shopping for a place to live, saw a classified ad, bought the condo after doing a title search, and recorded the deed, all at the instant the petition was filed. Under California law, such recording would render Chase Manhattan's lien void.

## B.   Equitable Subrogation

[6] Chase Manhattan offers an alternative theory, equitable subrogation. If a junior lienor pays off a senior lien, it may be subrogated to the senior lienor's position against other creditors, most typically when a surety pays its principal's obligation and steps into the principal's shoes against third parties.[26] Chase Manhattan would have us treat its current lien as subrogated to its own previous lien, since it used the money from the Deuels' third refinancing of their condominium to pay off its own loan from the second refinancing, and that note was secured by a recorded deed of trust.

[7] Equitable subrogation traditionally enables "[o]ne who pays, otherwise than as a volunteer, an obligation for which another is primarily liable," to be "given by equity the protection of any lien or other security for the payment of the debt to the creditor," and to "enforce such security against the prin-

---

[24] *Id.* § 1214.

[25] 11 U.S.C. § 544(a)(3).

[26] *See, e.g.*, *Mort v. United States*, 86 F.3d 890, 893-94 (9th Cir. 1996).

cipal debtor or collect the obligation from him."[27] California has adopted the traditional doctrine.[28]

Equitable subrogation does Chase Manhattan no good for three reasons. First, the creditor whose debt it paid off, itself has no lien, having discharged it by a recorded deed of reconveyance. Though there may be circumstances where a lien can be revived, they do not pertain where revival would prejudice senior or equal equities.[29] Second, "the right to subrogation will not be enforced to the injury of those having the legal title and an equal equity."[30] The California phrasing is that the doctrine only operates where it does "not work any injustice to the rights of others."[31] Equitable subrogation cannot operate here, because the trustee is treated as though he were a bona fide purchaser for value without notice of Deuel's condominium, later surprised by an unrecorded lien based on a discharged lien claimed by Chase Manhattan. A bona fide purchaser for value of the Deuel condo would learn from a title search that Chase Manhattan had discharged its lien, not that it still had one.

[8] No court would burden a home buyer with paying off some creditor of the seller who had not recorded a lien, much less one who had recorded discharging a lien, and the trustee is deemed by section 544 to be in the position of that home buyer. Here equitable subrogation would work an injustice, by jumping Chase Manhattan over other creditors who may have extended credit without record notice of Chase Manhattan's unrecorded lien.

---

[27]McClintock on Equity 332 (2d ed. 1948).

[28]*See Golden Eagle Ins. Co. v. First Nationwide Financial Corp.*, 31 Cal. Rptr. 2d 815, 821 (Cal. Ct. App. 1994).

[29]*Lawyers Title Ins. Corp. v. Feldsher*, 49 Cal. Rptr. 2d 542, 546 (Cal. Ct. App. 1996).

[30]McClintock on Equity 334.

[31]*Golden Eagle*, 31 Cal. Rptr. 2d at 821.

**[9]** Third, California courts give priority to a bona fide purchaser over one claiming equitable subrogation.[32] Likewise, in *National Bank of Alaska v. Erickson* (*In re Seaway Express Corp.*), we held that "[w]hen a creditor claims an inchoate equitable interest in real property owned by the debtor at the commencement of the case, which interest is not evidenced by a recorded instrument and not yet granted by a state court, the trustee as bona fide purchaser prevails."[33]

## CONCLUSION

The judgement of the Bankruptcy Appellate Panel is **AFFIRMED.**

---

[32]*See, e.g.*, *J.G. Boswell Co. v. W.D. Felder & Co.*, 230 P.2d 386, 389-90 (Cal. Ct. App. 1951).

[33]912 F.2d 1125, 1128-29 (9th Cir. 1990).