**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 11 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re:  ARRON AUGUSTIN AFFLALO,<br><br>  Debtor.<br>_____<br><br>LIVELIFE, LLC,<br><br>  Appellant,<br><br>  v.<br><br>BAY POINT CAPITAL PARTNERS, LP;<br>SHELLEY D. KROHN, Chapter 7 Trustee<br>for the Estate of Arron Augustin Afflalo,<br><br>  Appellees. | No.    23-15815<br><br>D.C. No. 2:21-cv-02106-ART<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
Anne R. Traum, District Judge, Presiding

Submitted April 9, 2024[**]
Pasadena, California

Before:  MURGUIA, Chief Judge, and MENDOZA and DE ALBA, Circuit
Judges.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

LiveLife, LLC appeals three bankruptcy court orders on motions for summary judgment denying LiveLife's claim to a first-priority lien on 16 Soaring Bird Court in Las Vegas ("the Property"). Those orders confirmed that Bay Point Capital Partners, LP ("Bay Point") and the Chapter 7 Trustee are the only parties that retain a security interest in the Property. The district court affirmed the bankruptcy court orders on appeal pursuant to 28 U.S.C. § 158(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 158(d) and affirm.

1.      LiveLife argues that the district court committed reversible error when it reviewed the bankruptcy court's factual conclusions for clear error, rather than de novo. In cases like this one where there is no genuine dispute regarding the basic facts, it is proper to review the bankruptcy court's factual findings for clear error. *See In re Com. Money Ctr., Inc.*, 350 B.R. 465, 473–74 (B.A.P. 9th Cir. 2006). Regardless, we review the bankruptcy court's decision directly, so the district court's purported use of the wrong standard of review would be "completely harmless." *Ratanasen v. State of Cal., Dep't of Health Servs.*, 11 F.3d 1467, 1469 (9th Cir. 1993) (internal quotation and citation omitted).

2.      Debtor Aaron Afflalo did not ratify the LiveLife Deed of Trust when he executed the Recorded Subordination Agreement. Under Nevada law, "contract ratification is the adoption of a *previously formed* contract, notwithstanding a quality that rendered it relatively void." *Merrill v. DeMott*, 951 P.2d 1040, 1044

(Nev. 1997) (quoting *Schagun v. Scott Mfg. Co.*, 162 F. 209, 219 (8th Cir. 1908)) (emphasis added). As the bankruptcy court and district court correctly concluded, the chronology of events precluded the Recorded Subordination Agreement from ratifying the later-formed LiveLife Deed of Trust. LiveLife's invitation to read the loan documents as a "single, integrated transaction," does not alter this conclusion. In some cases, "where two or more written instruments are executed contemporaneously the documents evidence but a single contract if they relate to the same subject matter and one of the two refers to the other." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 615 (Nev. 1983). By their express language, the relevant documents—the Recorded Subordination Agreement, the secured note, the LiveLife Deed of Trust, the personal guaranty, and Afflalo's loan application—reference different transactions between different parties. But even if we read these documents as a single contract, ratification would still be inappropriate. The documents would simply constitute a single contract expressing the intent of the parties, and there would be nothing to ratify.

3. The bankruptcy court and district court correctly held that LiveLife does not have a lien, equitable or otherwise, on the Property. In Nevada, "[i]f the parties intend to create a mortgage, no particular form of instrument or words is necessary to create an equitable mortgage." *Nee v. L.C. Smith, Inc.*, 624 P.2d 4, 7 (Nev. 1981). When a party claims that an equitable lien "arises out of an express

3

contract, the intention to create a lien must *clearly* appear." *Union Indem. Co. v. A.D. Drumm, Jr., Inc.*, 70 P.2d 767, 768 (Nev. 1937). LiveLife argues that the Recorded Subordination Agreement created a lien on the Property, but LiveLife's assertion is at odds with the express language of that document. The Recorded Subordination Agreement states that a separate deed of trust would create LiveLife's security interest, but nobody drafted, executed, or recorded that separate deed of trust. Because the Recorded Subordination Agreement's language is unambiguous, LiveLife's gestures toward parol evidence are unavailing. *See Kaldi v. Farmers Ins. Exch.*, 21 P.3d 16, 21 (Nev. 2001) ("Where 'a written contract is clear and unambiguous on its face, extraneous evidence cannot be introduced to explain its meaning.'" (quoting *Geo. B. Smith Chem. Works, Inc. v. Simon*, 555 P.2d 216, 216 (Nev. 1976))).

Because LiveLife does not have a legal interest in the Property, we need not address whether the Recorded Subordination Agreement binds Bay Point to a second-priority lien.

4.      LiveLife's claim for equitable subrogation is meritless because the Trustee has the power to avoid it. Under 11 U.S.C. §§ 544(a)(1) and (3), the Trustee acts both as "a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains . . . a judicial lien" as well as a "bona fide purchaser." Accordingly, if such a hypothetical creditor or purchaser could,

4

under Nevada law, set aside LiveLife's claim of equitable subrogation, the Trustee can do so as well. *See In re Deuel*, 594 F.3d 1073, 1076 (9th Cir. 2010) (recognizing that state law defines the extent of a trustee's power of avoidance). At the beginning of the bankruptcy proceedings, the records of the Clark County Recorder would have shown entries for the LiveLife Deed of Trust and the Recorded Subordination Agreement—both invalid documents giving notice of a conveyance that did not exist. They would also have shown a deed of reconveyance to Afflalo from BofI Federal Bank, the entity whose lien position LiveLife seeks to assume. A bona fide purchaser looking at these entries would only have notice of BofI's discharged lien. The purchaser would have no notice that a judge might, at some point, grant LiveLife an equitable security interest in the Property. Granting equitable subrogation in such circumstances would be inappropriate. *See In re Deuel*, 594 F.3d at 1080.

The Trustee's power to avoid LiveLife's claim to equitable subrogation relegates LiveLife to the role of an unsecured creditor of the bankruptcy estate. *See In re Pac. Exp., Inc.*, 780 F.2d 1482, 1486 (9th Cir. 1986) (holding that the right to avoid a party's interest under 11 U.S.C. § 544(a) leaves that party "with an unsecured claim"). Accordingly, we need not address the denial of LiveLife's claim of equitable subrogation against Bay Point.

**AFFIRMED.**

5