
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>LESLIE KLEIN,<br>　　　　　　　Debtor. | BAP No. CC-25-1002-LCF<br><br>Bk. No. 2:23-bk-10990-SK |
| LESLIE KLEIN; THE SECOND AMENDED KLEIN LIVING TRUST; THE MARITAL DEDUCTION TRUST OF ERIKA KLEIN; THE SURVIVOR'S TRUST OF LESLIE KLEIN; BARBARA KLEIN,<br>　　　　　　　Appellants,<br>v.<br>BRADLEY D. SHARP, Chapter 11 Trustee,<br>　　　　　　　Appellee. | Adv. No. 2:24-ap-01140-SK<br><br><br><br>**MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Central District of California
Sandra R. Klein, Bankruptcy Judge, Presiding

Before: LAFFERTY, CORBIT, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Leslie Klein ("Debtor"), his wife Barbara Klein, and certain trusts

created by Debtor and his former wife (collectively, "Appellants") appeal

---

　　　\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

1

the bankruptcy court's order granting the chapter 11[1] trustee's motion for summary judgment.

Many years ago, Debtor and his former wife created a trust and designated themselves as both trustees and beneficiaries of the trust. The trust provided for allocation of trust assets to certain subtrusts upon the death of Debtor's former wife.

The trust documents further provided that Debtor would be the sole trustee of both the main trust and all subtrusts, as well as a beneficiary of all four trusts. And although the trust included a spendthrift provision that purported to prevent creditors from reaching assets of the trust, the trust provisions allowed Debtor, as the sole trustee, to exploit trust assets as he saw fit, including for his own benefit and without any limits.

Debtor eventually remarried. Through a premarital agreement, Debtor provided his current wife a right to live on certain property held by the trust for the remainder of her life.

Debtor filed a bankruptcy petition in 2023. After the court appointed a chapter 11 trustee, the trustee initiated an action to recover real property held by the trusts. In a motion for summary judgment, the chapter 11 trustee argued that the spendthrift provision protecting the trusts was invalid, the assets of the trusts were property of the estate, and any interest

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

Debtor's current wife may have in the property could be avoided pursuant to the Code. The bankruptcy court agreed and entered summary judgment in favor of the chapter 11 trustee.

We AFFIRM.

## FACTS[2]

### A.    Prepetition events

In 1975, Debtor and his then-wife, Erika Klein, formed a family trust as settlors. In 1990, Debtor and Erika amended their family trust, executing the operative Second Amended Klein Living Trust (the "Klein Trust"). The Klein Trust designated Debtor and Erika[3] as co-trustees and named Debtor and Erika as beneficiaries for the duration of their lives.

The Klein Trust identified real property located on June Street in Los Angeles, CA (the "June Property") as an asset held by the trust. The trust documents also included a grant deed transferring the June Property to the Klein Trust.

Pursuant to the terms of the Klein Trust, Debtor and Erika had the authority, as co-trustees, to pay themselves, as beneficiaries, as much income as necessary for their "health, education, support, comfort, welfare,

---

[2] We have taken judicial notice of the bankruptcy court docket and various documents filed through the electronic docketing system. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] For ease of reference and to avoid confusion between Erika Klein, Debtor's former wife, and Barbara Klein, Debtor's current wife, we refer to Erika and Barbara by their first names. No disrespect is intended.

3

or happiness to maintain at a minimum [their] accustomed manner of living." In addition, if Debtor or Erika found the distribution of income insufficient, the Klein Trust allowed Debtor and Erika to distribute to themselves additional principal.

As trustees, Debtor and Erika enjoyed broad discretion in the handling of the Klein Trust's assets. For instance, as trustees, they could in their sole discretion retain or abandon property; sell, exchange, or repair property; lease property; or invest in property. They also could determine what trust assets qualified as principal and income and apportion funds to beneficiaries (i.e., themselves) accordingly. Additionally, they could invest funds, borrow money, obtain insurance, and loan money to third parties. Pursuant to the Klein Trust, a trustee of any subtrust created under the Klein Trust also would enjoy all of the broad powers listed above.

After one spouse's death, the Klein Trust provided that the surviving spouse would become the sole trustee and the sole beneficiary. At that time, the surviving spouse, as the sole trustee, would inherit and could exercise exclusively all of the broad powers listed above. And upon one spouse's death, the Klein Trust also contemplated the formation of three subtrusts: (i) the Surviving Spouse's Trust, (ii) the Marital Deduction Trust, and (iii) the Credit Trust.

When established, the Surviving Spouse's Trust would contain the surviving spouse's share of community property. The deceased spouse's share of community property would be split as follows: (i) first, for tax

4

planning purposes, a minimum amount would be placed into the Marital Deduction Trust; and (ii) second, after such minimum amount was met, the remainder of the deceased spouse's community share would be placed into the Credit Trust.

The Klein Trust provided that all three subtrusts could be funded in cash or in kind. In addition, the Klein Trust named the surviving spouse as the beneficiary of all three subtrusts, with the exception that Debtor's and Erika's children also were named as beneficiaries of the Credit Trust. The Klein Trust also included a spendthrift provision that read:

> No beneficiary shall anticipate, assign, encumber, or subject to any creditor's claim or to legal process any interest in principal or income before its actual receipt by any beneficiary. The beneficial and legal interests in this trust, its principal, and its income shall be free from interference or control of any beneficiary's creditor and shall not be subject to claims of any such creditor or liable to attachment, execution, bankruptcy, or other process of law.

Finally, the Klein Trust provided that, upon the death of the surviving spouse, the successor trustee (identified as one of Debtor's children) would distribute any assets remaining in the Surviving Spouse's Trust and the Marital Deduction Trust to the Credit Trust. At that time, the Credit Trust would be divided between Debtor's and Erika's children. Importantly, the successor trustee would not have any authority over any of the trusts until the death of both co-trustees, i.e., Debtor and Erika.

In December 2012, Erika died. Pursuant to the terms of the Klein Trust, Debtor became the sole trustee of the Klein Trust and any subtrust that may have been created thereunder, including the Surviving Spouse's Trust, the Marital Deduction Trust, and the Credit Trust. In 2013, Debtor recorded the Klein Trust.

After Erika's death, Debtor married Barbara. In their premarital agreement, Debtor agreed that Barbara "may also live in the [June Property] where the Parties live during her [lifetime]."

## B. Debtor's bankruptcy filing and the adversary proceeding

On February 22, 2023, Debtor filed a chapter 11 petition. Soon thereafter, Debtor identified a 50% interest in the June Property in his schedules and indicated that the remaining 50% of the property was owned by the Marital Deduction Trust. Debtor valued the June Property at $4.9 million and indicated there were no encumbrances against the June Property other than a $15,000 tax lien. Debtor also scheduled approximately $32 million in liabilities.

In his Statement of Financial Affairs, Debtor indicated that he had not transferred any property to a self-settled trust. Debtor also claimed the June Property as exempt and noted that Barbara maintained a "life estate" in the June Property. In subsequently amended schedules, Debtor again indicated that 50% of the June Property was held by Debtor and 50% by the Marital Deduction Trust. Debtor's schedules and statements were signed under penalty of perjury.

One day after Debtor filed amended schedules claiming a 50% interest in the June Property, certain creditors objected to Debtor's claim of a homestead exemption. After a hearing on the matter, the court reduced the amount of Debtor's claimed exemption but nevertheless allowed Debtor an exemption in the June Property in the amount of $189,050.

In May 2024, chapter 11 trustee Bradley D. Sharp (the "Trustee") initiated an adversary proceeding against Debtor, the Klein Trust, the Marital Deduction Trust, the Surviving Spouse's Trust, and Barbara. Through the operative first amended complaint (the "FAC"), the Trustee sought to quiet title to the June Property in the name of Debtor's bankruptcy estate and to avoid any unrecorded interests in the June Property under § 544(a)(3).

Appellants filed a consolidated answer to the FAC. In their answer, and contrary to Debtor's filed schedules, Appellants stated that the Surviving Spouse's Trust transferred its 50% interest in the June Property to the Marital Deduction Trust, such that the Marital Deduction Trust owned 100% of the June Property.

In September 2024, Appellants moved the court to order the joinder of Debtor's children as parties to the adversary proceeding (the "Joinder Motion"). Appellants argued that the children were necessary parties to the action because they were beneficiaries of the Credit Trust.

In October 2024, the court held a hearing and orally denied the Joinder Motion. The court held that the children were not necessary parties

to the adversary proceeding because: (i) the children did not have any interest in assets of the Klein Trust or any of the subtrusts until Debtor died, in which case they would only have an interest in any assets remaining at that time; (ii) Debtor did not produce any evidence that the subtrusts were ever created or funded, such that even upon Debtor's death there would be no assets flowing from the Surviving Spouse's Trust or the Marital Deduction Trust into the Credit Trust; and (iii) because Debtor was both the settlor and beneficiary of the Klein Trust and all three subtrusts, the spendthrift provision protecting trust assets from recovery by creditors was invalid. The court later entered an order denying the Joinder Motion (the "Joinder Order").

The Trustee eventually filed a motion for summary judgment on all his claims (the "MSJ").

After the Trustee filed the MSJ, Debtor filed an amended schedule A/B. This time, Debtor stated that the Credit Trust owned the June Property. Appellants also filed an opposition to the MSJ, reiterating that the June Property was owned entirely by the Credit Trust and referencing certain ledgers dated between 2014 and 2023 in support of this new contention. Echoing their arguments from the Joinder Motion, Appellants again argued that joinder of Debtor's children was required because the children were beneficiaries of the Credit Trust.

Finally, Appellants asserted that the spendthrift provision in the trusts protected the June Property from recovery by the estate and that the Trustee could not avoid Barbara's "life estate" interest in the June Property.

In December 2024, the court held a hearing on the MSJ and orally ruled in favor of the Trustee. Specifically, the court held that: (i) Debtor was judicially estopped from arguing that the June Property was not property of the estate because he successfully claimed an exemption in the June Property; (ii) there was no evidence demonstrating that the June Property was transferred from the Klein Trust to one of the subtrusts or that any of the subtrusts were funded or created; (iii) even if the June Property was transferred to one of the subtrusts, the subtrusts were self-settled trusts wholly controlled by Debtor and containing an invalid spendthrift provision, such that the June Property would still belong to the bankruptcy estate; (iv) Debtor's control over all of the trusts rendered Cal. Probate Code § 15304(b) inapplicable, such that the bankruptcy estate could reach assets that were contributed not only by Debtor, but also by Erika; and (v) Barbara's purported life estate interest in the June Property was never recorded and thus could be avoided by the Trustee. In connection with Appellants' arguments regarding the necessity of joining Debtor's children as defendants, the court referenced its earlier ruling on the Joinder Motion.

On December 20, 2024, the court entered an order granting the Trustee's motion for summary judgment (the "Summary Judgment Order"). Appellants timely appealed.

9

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(E) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court err in denying the Joinder Motion?

2. Was the failure to properly name certain defendants a jurisdictional defect that requires reversal of the Summary Judgment Order?

3. Did the bankruptcy court err in granting the MSJ?

## STANDARDS OF REVIEW

We review a bankruptcy court's Civil Rule 19 joinder determinations for an abuse of discretion. *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 969–70 (9th Cir. 2008) (citing *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022 (9th Cir. 2002)). "To the extent that in its inquiry the [bankruptcy] court 'decided a question of law, we review that determination de novo.'" *Id.* (quoting *Am. Greyhound Racing*, 305 F.3d at 1022).

We review the bankruptcy court's decision to grant or deny a motion for summary judgment de novo. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 830 (9th Cir. 2000). We apply the same standards used by the bankruptcy court under Civil Rule 56, as made applicable by Rule 7056. *Meade v. Cedarapids, Inc.,* 164 F.3d 1218, 1221 (9th Cir. 1999). Facts determined for summary judgment proceedings are not entitled to the

clearly erroneous standard of appellate review. *Audre, Inc. v. Casey (In re Audre, Inc.)*, 216 B.R. 19, 25 (9th Cir. BAP 1997), *overruled on other grounds as recognized by Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 104 n.2 (9th Cir. BAP 2007); *Gertsch v. Johnson & Johnson, Fin. Co. (In re Gertsch)*, 237 B.R. 160, 165 (9th Cir. BAP 1999).

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace* (*In re Francis*), 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted). A bankruptcy court abuses its discretion when it applies an incorrect legal rule or when its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

On appeal, Appellants argue that the bankruptcy court erred when it: (i) denied Appellants' request to join Debtor's children as defendants; (ii) allowed the action to proceed despite the Trustee's failure to properly name the trustee of the defendant-trusts as the defendant instead of the trusts themselves; (iii) held that the June Property is property of the estate; and (iv) held that the Trustee may avoid Barbara's life estate interest under § 544(a)(3). We address each of Appellants' arguments in turn.

**A.    The bankruptcy court did not err in denying the Joinder Motion.**

Appellants assert that the bankruptcy court erred in concluding that Debtor's children were not necessary parties under Civil Rule 19.

11

As a preliminary matter, we must ascertain if Appellants' appeal of the Joinder Order is timely and proper. In his appellate brief, the Trustee contends that Appellants may not raise any arguments related to the bankruptcy court's decision regarding joinder because Appellants did not timely appeal the Joinder Order.

But the Joinder Order was not a final judgment, and any appeal of the same would have been an interlocutory appeal. *See Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981) ("Orders granting or denying motions to add new parties to a pending suit are interlocutory and non-appealable."). "An interlocutory order becomes appealable when final judgment is entered." *Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 897 (9th Cir. 2001); *see also Munoz v. Small Bus. Admin.*, 644 F.2d 1361, 1364 (9th Cir. 1981) (an appeal from a final judgment draws in question all earlier non-final orders and all rulings which produced the judgment).

Thus, when a final order disposing of a matter is entered, earlier interlocutory orders "merge" into the final order. *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000). When a party appeals the final order, "[t]he notice of appeal encompasses all orders that, for purposes of appeal, merge into the identified judgment or appealable order or decree. **It is not necessary to identify those orders in the notice of appeal.**" Rule 8003(a)(4) (emphasis added).

12

Here, the Summary Judgment Order was a final, appealable order. Appellants timely appealed that order. Although Appellants did not identify the Joinder Order as an order on appeal, under Rule 8003(a)(4) and the doctrine of merger, the appeal of the Summary Judgment Order includes an appeal of all interlocutory orders, such as the Joinder Order, that merged into the Summary Judgment Order.[4] As a result, the appeal of the Joinder Order is timely.

We agree with the bankruptcy court that Debtor's children were not required parties for purposes of Civil Rule 19.

In their appellate brief, Appellants reference Civil Rule 19(a)(1)(B)(ii), which requires joinder, if feasible, where an action may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." According to Appellants, the "existing party" at such risk is the Trustee, because the Trustee may face future litigation initiated by Debtor's children as beneficiaries of the Credit Trust.

---

[4] Of course, an appellate panel need not review all interlocutory orders that may have merged into a final judgment or order; to facilitate an appellate panel's review of an interlocutory order, the appellant must adequately brief why the court should review that order. *See PCC Rokita S.A. v. HH Tech. Corp. (In re HH Tech. Corp.)*, 659 B.R. 788, 797 (1st Cir. BAP 2024) (noting that the "numerous interlocutory orders" merged into the final dismissal and appellants "were not required to list those orders in their notice of appeal," but "[t]o the extent the [a]ppellants desired appellate review of any interlocutory orders . . . they were required to brief them").

However, the plain language of Civil Rule 19 does not require joinder simply because there may be a threat of future litigation against the Trustee and/or bankruptcy estate. Rather, the Civil Rule applies when there is a "substantial risk" of multiple or inconsistent obligations borne by the estate. No such "substantial risk" exists in this case.

The crux of the Trustee's lawsuit against the Appellants was to identify the June Property as property of the bankruptcy estate under § 541. As further discussed below, there is no dispute that Debtor is the primary beneficiary of the Klein Trust and all three subtrusts.

Appellants mostly dispute the bankruptcy court's conclusion that Debtor's children would not become beneficiaries of the Credit Trust until Debtor's death, arguing that the children are identified as "primary beneficiaries" alongside Debtor. As to this point, Appellants may be correct. The Credit Trust identifies its beneficiaries as follows: "[s]urviving spouse, settlors' children." The Credit Trust does not refer to either Debtor (the surviving spouse) or Debtor's children as the primary beneficiary, instead listing all as both income and principal beneficiaries.

However, as further discussed below, there is no evidence that the June Property was ever held by the Credit Trust. Appellants did not provide any evidence of a transfer of the June Property from the Klein Trust to the Credit Trust. Appellants only provided ledgers – unattached to any trust document or any other document that would effectuate a transfer, such as a grant deed – that listed the June Property under a column titled

14

"Credit Trust." Given the lack of any indication in the record that the Credit Trust held the June Property, and because Debtor's children are only listed as beneficiaries of the Credit Trust and no other trusts, Debtor's children do not appear to have an interest in the June Property and are not required parties to this action.

Nevertheless, even if the June Property was placed into the Credit Trust, and even if we interpret the Credit Trust as naming both Debtor and his children as current beneficiaries, the record would still be devoid of a "substantial risk" of inconsistent obligations requiring joinder of the children to this action.

As of the petition date, the sole trustee of the Klein Trust and all three subtrusts was Debtor. Debtor's children are not named as trustees of any of the trusts; as is clear from the language in the Klein Trust, Debtor's son is named a successor trustee only after Debtor dies.

The Klein Trust and all three subtrusts confer the broadest possible authority on Debtor, as the sole trustee of all four trusts, to use and exploit any assets held by any of the trusts. Pursuant to the terms of the Klein Trust and the subtrusts, Debtor, as the sole trustee, does not need permission from any beneficiaries to take any action with respect to any of the trust's assets. For instance, Debtor could elect to sell property held by the trusts without disclosing his intention or receiving approval from any other beneficiaries, such as Debtor's children. Pursuant to the terms of the trusts, Debtor also could use the proceeds of any such sale (or any other

15

exploitation of trust property) to pay himself, as a beneficiary of all four trusts, any amount he decides is appropriate. Thus, even if Debtor's children have a current beneficial interest in the Credit Trust, the children would be entirely powerless to stop Debtor, as the sole trustee, from exploiting any of the trusts' assets for his own benefit.

As a result, any right the children would have to assets held by the Credit Trust is inferior to Debtor's. Given that Debtor's children could not exercise any effective rights, the exclusion of the children from this action did not present a risk of inconsistent obligations. As a result, the court did not abuse its discretion in holding that joinder of the children was not required under Civil Rule 19.[5]

## B.    Summary judgment standard

Civil Rule 56(a) provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute over material facts is

---

[5] For the first time on appeal, Appellants also argue that the Credit Trust was a required party to this action. Appellants never argued that the Credit Trust was a required party before the bankruptcy court. As a result, their argument on appeal is waived. *Orton v. Hoffman (In re Kayne)*, 453 B.R. 372, 386–87 (9th Cir. BAP 2011) (issue not raised in bankruptcy court is waived on appeal); *see also SK PM Corp. v. Sharp (In re SK Foods, L.P.)*, BAP No. EC-12-1624-JuKiPa, 2013 WL 6488275, at *11 (9th Cir. BAP Dec. 10, 2013) (holding that appellants' failure to argue before the bankruptcy court that certain parties were necessary or indispensable under Civil Rule 19 qualified as a waiver of such arguments on appeal).

In any event, even if Appellants had not waived this argument, nothing in the record demonstrates that the June Property was ever placed into the Credit Trust. As such, it is unclear what interest the Credit Trust would have in this litigation.

genuine where a reasonable jury could return a verdict for the nonmoving party based on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the movant has come forward with uncontroverted facts entitling it to relief, the burden shifts to the nonmovant to establish that there is a specific and genuine disputed issue of material fact to warrant a trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 332 n.3 (1986) (Brennan, J., dissenting). The nonmovant "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery materials, to show that the dispute exists." *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008) (citation omitted). Conjecture, surmise or "metaphysical doubt" by the nonmovant of the movant's assertions will not defeat a summary judgment motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *In re Gertsch*, 237 B.R. at 165 (even in cases where intent is at issue, summary judgment may be appropriate if the nonmovant "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation") (citation omitted).

In deciding whether material factual issues exist, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. But the court must do so only if a nonmoving party submits specific evidence that contradicts a fact specifically averred by the moving party. *Lujan v. Nat'l Wildlife Fed'n*,

497 U.S. 871, 888 (1990). If a motion for summary judgment is properly supported and the nonmovant does not set forth specific facts showing a genuine issue for trial, the court must grant summary judgment. Civil Rule 56(a); Rule 7056.

## C. The Trustee's failure to properly identify certain trusts is not a jurisdictional defect requiring reversal.

For the first time on appeal, Appellants contend that the Trustee improperly sued the Klein Trust, the Marital Deduction Trust, and the Surviving Spouse's Trust instead of naming Debtor, acting in his capacity as the trustee of the trusts, as the defendant. Appellants assert that this issue qualifies as a jurisdictional defect, and thus their arguments about the issue were not waived despite their failure to raise them before the bankruptcy court.

Appellants are correct that a "trust itself can neither sue nor be sued in its own name. Instead, the real party in interest in litigation involving a trust is always the trustee." *Presta v. Tepper*, 179 Cal. App. 4th 909, 914 (Cal. Ct. App. 2009). However, the failure to name a trustee is not seen as a "jurisdictional defect" that "deprive[s] courts of power to act." *Jo Redland Tr., U.A.D. 4-6-05 v. CIT Bank, N.A.*, 92 Cal. App. 5th 142, 161 (Cal. Ct. App. 2023), *as modified* (June 28, 2023). Even where the trustee of a trust is not named as a defendant, and recognizing that the trustee is an "indispensable party," "the court still has the power to render a decision as to the parties before it which will stand." *Id.*

In any event, Debtor actually appeared in this action as the trustee of the defendant-trusts. For instance, Debtor signed stipulations on behalf of the trusts, specifically identifying himself as the trustee of each defendant-trust. Appellants' answer also properly identified the defendant parties by naming Debtor, as trustee on behalf of each trust, as the proper defendant.

Appellants have not presented a jurisdictional defect that would require reversal, and Appellants waived any argument regarding this issue. *See In re Kayne*, 453 B.R. at 386–87 (issue not raised in bankruptcy court is waived on appeal).

**D.    The June Property is property of the bankruptcy estate.**

Appellants contend that the assets held by the Marital Deduction Trust and the Credit Trust, including the June Property, are not property of the estate because Erika, and not Debtor, funded those subtrusts.

> **1.  There is no evidence that the June Property was transferred to the Marital Deduction Trust or the Credit Trust.**

As a preliminary matter, and as noted above, the record does not indicate that the June Property was ever transferred to either the Marital Deduction Trust or the Credit Trust, or that the Marital Deduction Trust and Credit Trust were created at all.

Under California law, "[a] trust is created only if there is trust property." Cal. Prob. Code § 15202. While it is true that the Klein Trust contemplated that Erika's share of the June Property would be placed in either the Marital Deduction Trust (if necessary to reach the minimum

19

amount required to avoid certain taxes) or, alternatively, the Credit Trust, the record does not reflect that Debtor ever effectuated any such transfer.

On this point, the Trustee presented evidence that the June Property was held by the Klein Trust, which provided that all property identified in the attached schedule A, which listed the June Property, would be transferred to the Klein Trust. The Trustee also presented a grant deed effectuating the transfer of the June Property to the Klein Trust.[6]

Appellants' sole evidence disputing that the Klein Trust owned the June Property as of the petition date is a string of ledgers that lists the June Property under a column titled "Credit Trust." The ledgers are handwritten and unrecorded, and not attached to any trust documents or other instruments of transfer, such as a grant deed.

To present a genuine issue of material fact, Appellants must submit "**specific** evidence" that contradicts the Trustee's evidence showing that

---

[6] Citing *Estate of Heggstad*, 16 Cal. App. 4th 943 (1993), Appellants contend that they did not have to produce a grant deed establishing that the June Property was owned by the Klein Trust because California law allows for property to be conveyed by a declaration of trust. Appellants' reference to *Heggstad* is confusing because neither the bankruptcy court nor the Trustee disputed that the Klein Trust held the June Property.

To the extent Appellants rely on *Heggstad* in support of their argument that the trust documents establish a transfer **out** of the Klein Trust and into one of the subtrusts, *Heggstad* is inapplicable because none of the trust documents identify any transfers of the June Property out of the Klein Trust. Thus, even if a declaration of ownership within the trust documents would be sufficient to effectuate a transfer without a grant deed, the trust documents only provide that the Klein Trust, and no other trust or entity, owns the June Property. As discussed below, the only documents relied on by Appellants are certain ledgers, which were not part of any trust documents. As a result, *Heggstad* is inapposite.

the Klein Trust owns the June Property. *In re Barboza*, 545 F.3d at 707 (emphasis added). Given the Trustee's submission of a recorded grant deed and the recorded Klein Trust, both of which indicate that the Klein Trust owns the June Property, as well as Debtor's own myriad and conflicting statements[7] – some sworn under penalty of perjury – regarding the ownership of the June Property, the submission of ledgers hardly qualifies as the type of evidence that would create a genuine issue of material fact regarding the ownership of the June Property.

Nevertheless, even if Debtor transferred the June Property from the Klein Trust to a subtrust, the Trustee could recover the Property under § 544(a)(3). Under § 544(a)(3):

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

---

[7] In its ruling, the bankruptcy court relied in part on the doctrine of judicial estoppel. To judicially estop a party, courts consider "(1) whether a party's later position is clearly inconsistent with its original position; (2) whether the party has successfully persuaded the court of the earlier position, and (3) whether allowing the inconsistent position would allow the party to derive an unfair advantage or impose an unfair detriment on the opposing party." *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (cleaned up).

Debtor successfully argued that he is entitled to a homestead exemption in the June Property, an argument that depended on Debtor having an interest in the June Property. Arguably, Debtor's now inconsistent position could be subject to the doctrine of judicial estoppel. However, the doctrine would only estop **Debtor** from arguing that he did not have an interest in the June Property. It would not estop the other Appellants, such as the trusts, from asserting their interest in the June Property.

21

. . . .

> (3) A bona fide purchaser of all real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that attains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

In other words, "[a] bankruptcy trustee has the power to avoid any transfer that a hypothetical bona fide purchaser for value could have avoided under the law of the state in which the real property is located." *Chase Manhattan Bank, USA, N.A. v. Taxel (In re Deuel)*, 594 F.3d 1073, 1076 (9th Cir. 2010).

> Under California law:

> Every conveyance of real property or an estate for years therein . . . is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action.

Cal. Civ. Code § 1214.

There is no dispute that the ledgers – the only evidence offered by Appellants regarding ownership of the June Property – were never recorded. Thus, as of the petition date, a hypothetical bona fide purchaser for value would not have any notice that the June Property had been transferred out of the Klein Trust.

22

Appellants' sole argument regarding this issue is that the Klein Trust itself was recorded. Although not explicitly stated, a generous reading of Appellants' argument is that subsequent purchasers should have been on notice that the June Property would have been transferred to one of the subtrusts upon Erika's death.[8]

As noted by the bankruptcy court, there is no evidence that any of the subtrusts were properly funded or created after Erika's death. Thus, the fact that the Klein Trust anticipated a transfer of assets after Erika's death is insufficient to provide notice to subsequent purchasers that such transfers were **actually** effectuated.

In any event, for the reasons discussed below, even if the June Property was properly transferred to one of the subtrusts, the Trustee would still be able to recover the June Property into the estate.

**2. Even if the June Property was placed into one of the subtrusts, the June Property would be property of Debtor's bankruptcy estate.**

Even if we assume that the June Property landed in any of the subtrusts, the June Property would still be property of the estate. *See Cutter v. Seror (In re Cutter)*, 398 B.R. 6 (9th Cir. BAP 2008), *aff'd*, 468 F. App'x 657 (9th Cir. 2011). Although Appellants attempt to distinguish this case from *Cutter*, the facts in *Cutter* are remarkably similar to the facts before us, and we are bound to follow our precedent in *Cutter*.

---

[8] Erika's death certificate was included in the recorded trust documents.

23

In *Cutter*, the debtor created a trust and named himself the trustee. *Id.* at 12. Although the debtor did not explicitly name himself a beneficiary, the trust agreement provided that the debtor, as trustee, could make distributions from the trust to benefit himself, as trustor, in an amount to provide for his health, education, or the maintenance of his customary manner of living. *Id.* The trust agreement further allowed the debtor to use trust property for emergencies related to his health, education, support and/or maintenance. *Id.* Notwithstanding these provisions, the trust agreement prohibited the debtor, as trustee, from exercising his powers primarily for the benefit of himself instead of for the beneficiaries of the trust. *Id.* The trust agreement also contained a spendthrift provision. *Id.*

In reviewing this trust agreement, the bankruptcy court in *Cutter* concluded that the debtor was a primary beneficiary of the trust despite the trust agreement not explicitly naming the debtor as a beneficiary. *Id.* at 14. Because the debtor was the settlor, the trustee, and the beneficiary, the bankruptcy court held that the trust was a self-settled trust and that the assets belonging to the trust were property of the debtor's bankruptcy estate. *Id.* However, the bankruptcy court excluded from its ruling one-third of a share of real property that was contributed by someone other than the debtor. *Id.* at 11-12.

On appeal, the Panel affirmed the bankruptcy court's conclusion that the trust's assets were property of the estate. *Id.* at 18-20. The Panel first reviewed the applicable law:

24

> [W]hile assets transferred to a trust do not ordinarily become property of the bankruptcy estate of the trust's trustee, powers that a debtor who is trustee of a trust may exercise for his or her own benefit become property of the estate. Moreover, to the extent a debtor holds a beneficial interest in a trust, that beneficial interest becomes property of the estate, unless it is protected by a *valid* spendthrift provision. Assets transferred to an irrevocable trust do not become part of a bankruptcy estate unless the transfer or the trust is invalid.

*Id.* at 19 (cleaned up).

Because the debtor in *Cutter* had "access to potentially all of the Trust's assets and income in order to maintain his standard of living," and "possessed the right, at his sole discretion, to make distributions" to himself, the Panel held that the debtor held an equitable interest in the trust as a beneficiary. *Id.* at 20.

"The critical inquiry in determining whether a spendthrift trust is valid under California law is whether the trust's beneficiaries exercise excessive control over the trust." *Ehrenberg v. S. Cal. Permanente Med. Grp. (In re Moses)*, 167 F.3d 470, 473 (9th Cir. 1999). "[U]nder California law, a settlor of a spendthrift trust cannot also act as beneficiary of that trust (i.e., California law prohibits 'self-settled' trusts)." *Id.* "California law voids self-settled trusts to prevent individuals from placing their property beyond the reach of their creditors while at the same time still reaping the bounties of such property." *Id.*

25

Relying on *Moses*, the Panel in *Cutter* held that, because the debtor could potentially use all of the trust's assets for his own benefit, the trust's assets could be recovered into the debtor's bankruptcy estate. *In re Cutter*, 398 B.R. at 21.

The Panel then went a step further than the bankruptcy court, stating that the bankruptcy trustee could have recovered "the entire Trust corpus," including the one-third share of real property contributed by someone other than the debtor, "by virtue of section 541 alone." *Id.*

> Ordinarily, if only a portion of a spendthrift trust's corpus is contributed by a beneficiary-debtor, only that portion becomes property of the beneficiary-debtor's estate. If, however, the trust agreement allows the debtor-beneficiary to exercise control over and reach trust property contributed by others, the estate is entitled to the maximum amount that the trust could pay or distribute to the debtor-beneficiary. Therefore, the bankruptcy court could have, and should have, granted summary judgment granting Trustee title to all of the Trust corpus.

*Id.* at 21-22.

Here, unlike in *Cutter*, Debtor is explicitly named as a beneficiary of all four trusts. Thus, unlike *Cutter*, here an inquiry into whether Debtor has a beneficial interest in any of the trusts is unnecessary.

Because Debtor also is the settlor and trustee of all four trusts, the trusts are "self-settled." As is evident from the terms of the trusts, Debtor enjoyed "unfettered access to and dominion and control" over the Klein Trust and all three subtrusts. As highlighted above, Debtor could use and

26

exploit all of the trusts' assets for his own benefit, with no limitation, and in his sole discretion as the only trustee of all four trusts.

Under *Cutter* and *Moses*, this "excessive control" over the trusts, and the ability for unrestricted self-dealing by Debtor, renders the spendthrift provision of the trusts invalid, and the Trustee may recover the whole of the trusts' assets into the bankruptcy estate.

Appellants' arguments distinguishing *Cutter* are unpersuasive. Appellants rely heavily on their assertion that Erika's share of community property funded the Marital Deduction Trust and the Credit Trust, relying on Cal. Probate Code § 15304(b). However, in *Cutter*, the fact that a third party contributed property to the trust was irrelevant where the debtor could reach the property for his own benefit. As explained by the Panel in *Cutter*, notwithstanding Cal. Probate Code § 15304(b), the debtor's unfettered ability to reach the entirety of the trust corpus rendered the assets of the trust property of the estate by operation of § 541.

Here, the trust documents make clear that Debtor can reach **any** assets held by any of the trusts for his own benefit, whether contributed by Erika or Debtor. Thus, under *Cutter* and § 541,[9] the Trustee may exercise

---

[9] Section § 541(b)(1) further bolsters the holding of *Cutter*. Pursuant to § 541(b)(1), property of the estate does not include "any power that the debtor may exercise **solely** for the benefit of an entity other than the debtor." (Emphasis added). Because Debtor may exercise the powers outlined above for his own benefit, the implication of § 541(b)(1) is that those powers **are** property of the estate and that the bankruptcy trustee may exercise them to benefit Debtor's creditors.

Debtor's powers and reach any assets held by the trusts for the benefit of the bankruptcy estate.

Appellants also attempt to distinguish *Cutter* by arguing that Debtor's use of trust property was limited so that some assets would pass to Debtor's children. However, the trust documents completely contradict this assertion. Nothing in the language of the Klein Trust or any of the subtrusts limits Debtor's use of assets or requires Debtor to keep a minimum amount of assets intact for his children.

Appellants also argue that Debtor never intended to sell the June Property, or to use the June Property as an income-producing property, but Debtor's intentions are not the relevant inquiry. Rather, Debtor's **ability** to sell or lease the June Property determines the amount of control Debtor maintains over trust assets. Whatever Debtor's or Erika's intentions, the trust documents clearly allow Debtor to sell or lease the June Property in his sole discretion as the surviving trustee.

Finally, Appellants argue that the Marital Deduction Trust and Credit Trust are irrevocable trusts. The trust in *Cutter* also was irrevocable, and the nature of the trust as such did not impact the Panel's analysis in that case.

For the reasons set forth above, the June Property is property of the estate regardless of which trust holds the June Property.

**E.** **The bankruptcy court did not err in holding that the Trustee may avoid Barbara's life estate interest in the June Property.**

As discussed above, "California is a race-notice jurisdiction and requires every conveyance of real property to be recorded in order to be of value against a subsequent purchaser of the same property." *In re Zubenko*, 528 B.R. 784, 788 (Bankr. E.D. Cal. 2015) (citing Cal. Civ. Code § 1214).

Here, it is undisputed that Barbara's life estate interest in the June Property was never recorded. Nevertheless, Appellants contend that the Trustee had actual or constructive notice of Barbara's life estate interest because Barbara lived on the June Property.

Appellants are correct "that constructive or inquiry notice obtained in accordance with California Civil Code section 19 can defeat a trustee's claim." *Robertson v. Peters (In re Weisman)*, 5 F.3d 417, 420 (9th Cir. 1993). Under Cal. Civ. Code § 19, "[e]very person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he or she might have learned that fact."

"[W]hen the title holder jointly occupies property with a stranger to title claiming an interest in the property, the occupancy by the stranger to title does not provide constructive notice of his or her interest." *Huber v. Danning (In re Thomas)*, 147 B.R. 526, 531 (9th Cir. BAP 1992), *aff'd*, 32 F.3d 572 (9th Cir. 1994). "This general rule is often applied when the joint occupants are related to one another." *Id.*

29

As of the petition date, the recorded title owner of the June Property was the Klein Trust. Debtor was the sole beneficiary of the Klein Trust. Barbara is not named as a trustee or beneficiary anywhere in the Klein Trust or any of the subtrusts. Thus, as of the petition date, only Debtor's interest in the June Property was on title.

Because Debtor jointly occupied the June Property, under the authorities above, Barbara's presence on the property alongside Debtor was insufficient to provide constructive notice that she also had an interest in the June Property. Given that Barbara's life estate interest was never recorded, and a hypothetical subsequent bona fide purchaser would not otherwise have constructive notice of Barbara's interest, the bankruptcy court did not err in holding that the Trustee could avoid Barbara's life estate interest under § 544(a)(3).

## CONCLUSION

The bankruptcy court did not err in granting the MSJ. We therefore AFFIRM.